Franklin Bank Note Company, Respondent, v. Charles W. Mackey, Appellant.

Agency — Existence of, Question for Court when Facts Undisputed. Where the burden of proving, by a preponderance of evidence, a third party's agency for the defendant rests upon the plaintiff as essential to a recovery, it is proper for the court to direct a verdict for the defendant when, under correct rulings as to the admission of evidence, the facts bearing upon the subject of the existence of the agency are undisputed and it is apparent therefrom that the plaintiff has not met the burden resting upon him.

*Franklin Bank Note Co. v. Mackey*, 83 Hun, 511, reversed.

(Argued March 17, 1898; affirmed April 19, 1898 [see 155 N. Y. 685]; reargument granted October 11, 1898 [see 157 N. Y. 674];* reargued January 26, 1899; decided February 3, 1899.)

Appeal from an order of the late General Term of the Supreme Court in the first judicial department, entered January 26, 1895, sustaining the plaintiff's exceptions and ordering a new trial in a case where a verdict was directed for the defendant, and the exceptions were ordered to be heard in the first instance at General Term.

The facts appear in the opinion.

*Henry L. Burnett* and *Max J. Kohler* for appellant. Under the terms of the guaranty defendant was not liable until the printed matter was delivered by plaintiff to the principal debtor, and plaintiff's whole theory of recovery against the guarantor for the reasonable value of the services rendered under the uncompleted contract is erroneous and untenable. (*De Luka* v. *Goodwin*, 142 N. Y. 194; *Butler* v. *Rawson*, 1 Den. 105; *Benjamin* v. *Rogers*, 126 N. Y. 60.) The trial court properly treated the agency question as a matter of law for the court, and this holding is correct, even if both of the excluded questions be treated as answered most favorably to plaintiff, to wit, in the negative. (Mechem on Agency, § 105; *Gulick* v. *Grover*, 33 N. J. L. 463; *Johnson* v. *Boston Co.*, 135 Mass. 209; *Smith* v. *Clews*, 105 N. Y. 283; *Hemmens*

---

*See, also, opinion of one of the judges at Chambers, in reference to reargument and stay of proceedings, page 683 of this volume.

v. *Nelson,* 138 N. Y. 517; *Robbins* v. *S. F. Ins. Co.,* 149 N. Y. 477; *M. N. Bank* v. *Gallaudet,* 120 N. Y. 298; *Carroll* v. *Upton,* 3 N. Y. 272; *Hedges* v. *H. R. R. R. Co.,* 49 N. Y. 224; *Laporte* v. *Wells, Fargo & Co.,* 23 App. Div. 267.) Hall was plaintiff's agent in this transaction. (*Jacobs* v. *Marshall,* 6 Duer, 689; *Walsh* v. *H. F. Ins. Co.,* 73 N. Y. 5; *Edwards* v. *Dooley,* 120 N. Y. 540; *Timpson* v. *Allen,* 149 N. Y. 513; *Argersinger* v. *Macnaughton,* 114 N. Y. 535; *Stirn* v. *H. H. Co.,* 8 Misc. Rep. 246; *Briggs* v. *Kennett,* 8 Misc. Rep. 264; *Goodwin* v. *M. M. L. Ins. Co.,* 73 N. Y. 480; *Smith* v. *Clews,* 105 N. Y. 283; *Lantry* v. *Sutton,* 5 N. Y. Supp. 14.) Unless the provision as to time of performance made by defendant with Hall is a term of the contract, there was no meeting of minds at all, and hence plaintiff has failed to establish the contract set up. (*Lantry* v. *Parks,* 8 Cow. 63; *Jennings* v. *Camp,* 13 Johns. 94; *Pullman* v. *Corning,* 9 N. Y. 93; *Smith* v. *Brady,* 17 N. Y. 173; *Cunningham* v. *Jones,* 20 N. Y. 486; *Galvin* v. *Prentice,* 45 N. Y. 162; *Mount* v. *Lyon,* 49 N. Y. 552; *Booth* v. *Bierce,* 38 N. Y. 463; *Cutts* v. *Guild,* 57 N. Y. 229; *Sourwine* v. *Truscott,* 17 Hun, 432.) Upon the facts of the case as established by the uncontroverted evidence, a direction of a verdict for defendant was proper. (*Baker* v. *Higgins,* 21 N..Y. 397.) The order of the General Term should, in any event, have provided for a new trial only with respect to the bonds, not the stocks, and judgment absolute can properly be ordered only for the value of the bonds under the holding of the trial court. (*Wright* v. *Nostrand,* 98 N. Y. 669; *Conklin* v. *Snider,* 104 N. Y. 641.)

*William J. Gibson* for respondent. This court has no jurisdiction to cause a remittitur to be returned after it has been filed in the court below, and that court has made and entered an order for judgment thereon; and a judge of this court has no authority to stay proceedings in an action for a longer time than twenty days without notice of the application. (Code Civ. Pro. § 775; *People ex rel.* v. *Nelliston,* 79

N. Y. 638.) Hall was the agent of the defendant when he came to see the plaintiff in regard to printing the bonds, and throughout the whole transaction. (*Kennedy* v. *McAllaster*, 31 App. Div. 453, 457; *Munoz* · v. *Wilson*, 111 N. Y. 300; *Volkmar* v. *M. R. Co.*, 134 N. Y. 418; *Goldsmith* v. *Coverly*, 75 Hun, 48; *Dows* v. *Greene*, 16 Barb. 71, 72; *Lamb* v. *Irwin*, 69 Penn. St. 436; *N. E. M. S. Co.* v. *Addison*, 15 Neb. 335; *Morrison* v. *Whiteside*, 17 Md. 452.) The court erred in excluding the questions on the plaintiff's examination of Mr. Cary, going to show that Mr. Hall was not the agent of the plaintiff. (*C. R. R. & B. Co.* v. *Smith*, 76 Ala. 572; *Morrison* v. *Whiteside*, 17 Md. 452; *Scott* v. *Crane*, 1 Conn. 255; *Plumsted* v. *Rudebagh*, 1 Yeates, 502; *James* v. *Stookey*, 1 Wash. C. C. 330; *Marvin* v. *Wilber*, 52 N. Y. 270; *Proctor* v. *Tows*, 115 Ill. 138; *Stringham* v. *S. N. Ins. Co.*, 5 Abb. [N. S.] 80.) The plaintiff is entitled to recover in this action on the ground that the proofs were retained and never returned and no objection made to them. (*U. S.* v. *Behan*, 110 U. S. 338; *Simmons* v. *Ocean Causeway*, 21 App. Div. 30; *Clark* v. *Mayor, etc.*, 4 N. Y. 338.) This court does not have any authority under the statute and the stipulation to do otherwise than order judgment absolute. (Code Civ. Pro. § 194; *Godfrey* v. *Moser*, 66 N. Y. 250; *Conklin* v. *Snider*, 104 N. Y. 641.)

VANN, J. The plaintiff alleged in its complaint that in May, 1887, it contracted with the Pittsburg & Northeastern Railway Company to furnish certain bonds, coupons and certificates of stock for the sum of $2,500.00, which the company promised to pay the plaintiff, and the defendant guaranteed in writing that the company would pay the same; that the plaintiff entered upon the execution of the contract, prepared models, engraved and printed certain bonds, engraved certain stock certificates and submitted proofs of portions of said bonds and certificates to the railroad company, but that neither the company nor the defendant had passed upon said proofs, and that both had declined to furnish plaintiff with the informa-

tion and directions necessary to the completion of the contract; that the plaintiff had duly performed part of said contract and had complied with the agreement so far as permitted by the railroad company and the defendant. Judgment was demanded for the sum of $1,630.00, with interest from May 10th, 1889.

Upon the trial it appeared that one Hall, who had no connection with the railroad company, or with either party, but was acquainted with the defendant, on learning that the railroad company was about to issue some bonds and stock, applied to several engraving companies, including the plaintiff, for propositions to do the work of engraving and printing the bonds, coupons and certificates. So far as appears he did this voluntarily, for the purpose of inducing a contract and securing commissions from one or both of the contracting parties. He took the various propositions to the defendant, who, upon examining them, found that the plaintiff's was the lowest, and thereupon told Hall that if he would bring a proposition in proper form he would act upon it. Hall at once procured from Mr. Cary, the manager of the plaintiff, a proposition in writing, dated May 13th, 1887, and addressed to the railroad company, which was substantially in these words : " We will furnish the 2,500 coupon bonds for the sum of $2,200, and 1,000 certificates of stock for $330, the terms of payment being cash on completion of order. We would ask for a letter of acceptance of the above, and also a line from Mr. C. W. Mackey to the effect that the bill will be paid." The next day the defendant wrote at the bottom of this proposition : " I hereby accept the foregoing for the Pittsburg & Northeastern R. R. Co. and guarantee the payment of the bill. Charles W. Mackey." Although Hall presented this paper to the defendant the latter did not send it back to the plaintiff by him, but Mr. Barnes, who was to be the chief engineer of the railroad company, sent it by mail, accompanied by a letter dated May 14th, in which he said : " I herewith send Mr. Mackey's acceptance of your proposal. Please send me the proofs for examination, when ready, and I will send them to Mr. Mackey for his approval." Two days later Mr. Cary replied, and

among other things, wrote : " We are preparing the models and will submit them for your approval in a few days." The plaintiff thereupon prepared what are known as models for the bonds and certificates. These models, according to the custom of the business, which was well known to both the plaintiff and defendant, are prepared by the engraver without charge for the approval of° the company intending to issue · the bonds and certificates before they are engraved or printed. They consist of pictures pasted upon a sheet of paper, the size of the proposed bond, with the form of the bond written out so that the model fairly suggests' how the bond will appear when engraved and printed. The defendant furnished the manuscript for the work, but certain blanks were left therein, relative to the rate of interest and the like, as the details had not all been settled.

The plaintiff completed the models and sent them by Hall to the defendant, who examined them and wrote upon each the following : " Model approved May 24, 1887, as far as it goes. Charles W. Mackey." After thus approving the models the defendant delivered them to Hall, but told him, as both he and Mr. Barnes testified without contradiction, to tell the plaintiff not to go on with the work until further instructions, as " we might have to change the 'character of the bonds in different ways." Hall delivered the models to the plaintiff, but instead of delivering the message, told the manager that Mr. Mackey said, " go on with the work." Thereupon the plaintiff went on with the work, but the missing data prevented its completion. Proofs were printed of the imperfect bonds, but not of the coupons or certificates, and sent to the defendant, who made no comment and sent back no word. The plaintiff never asked for the additional data and did no work after sending said proofs. Matters remained in this shape until July 19th, 1888, when the plaintiff sent a bill to the defendant for the value of the work done up to the time that the proofs were sent, nothing having been done subsequently. The defendant at once wrote expressing his surprise and stating that he distinctly informed plaintiff's agent that he did

not want the bonds or certificates engraved until further orders. Some three years later the plaintiff commenced this action to recover the reasonable value of the services performed between the dates when the models were received and the proofs forwarded. On the trial, at the close of the evidence given in behalf of both parties, the court directed a verdict for the defendant, but ordered the exceptions to be heard in the first instance before the General Term. That court, upon hearing the exceptions taken by the plaintiff, sustained them, and ordered a new trial. The defendant gave the usual stipulation and came here.

The pivotal question in this case is whether Hall was the agent of the plaintiff, or of the defendant, for the purpose of delivering the models to the latter and taking back his message to the former. The plaintiff claims that this was a question of fact for the jury, and hence that the learned trial judge erred in directing a verdict for the defendant. There was no evidence that Hall was the agent of the defendant, although it appeared that years before they were well acquainted. On the other hand, Mr. Cary, the manager of the plaintiff and its principal witness, testified on his cross-examination not only that he expected to pay Hall a commission for getting the order, but referred to the delivery of the models to the defendant as follows: " I presume one of my clerks took them down," meaning to the defendant. " I sent them with somebody that was authorized to show them to him and to take what instructions he had to give." The next day, when Mr. Cary was on the stand, he stated, " I would like to state this, that yesterday in the testimony in regard to the models and proofs, that I said — I think I said — Mr. Rose took the models down ; it was Mr. Hall who took the models down and Mr. Rose who took the proofs. Mr. Hall brought the models back and gave them to me." Both Mr. Barnes and the defendant testified that Hall was the person who delivered the models, and that the defendant instructed him to tell the plaintiff's manager not to go on with the work until further instructions, as they might have to change the character

19

of the bonds in different ways. Cary had written only a few days before that he was preparing the models and would submit them for approval in a few days, so that Hall's visit as his representative had been duly announced. All of this testimony was neither contradicted nor modified, and it establishes the agency of Mr. Hall for the plaintiff for the purpose mentioned by Mr. Cary, to wit, that he " was authorized to show the models to him (defendant) and take what instructions. he had to give." Owing to the way that the record is made up, with the testimony of Mr. Cary scattered over many pages, we had some doubt upon the first argument whether Hall was the messenger by whom the models were sent to the defendant, but a careful examination of the evidence leaves no doubt upon the subject, and, indeed, the learned counsel for the plaintiff, upon the reargument, very fairly stated that Hall was the messenger used by Cary to deliver the models and take back the defendant's instructions. Mr. Cary also testified : " After you get an order it is the custom and rule to draw up certain models and submit them for their approval or disapproval, or qualification or correction, and that we do not go ahead with the work until those are returned, or until you come to some agreement about the model."

As the contract is silent as to the time of performance, the defendant had the right to give reasonable directions upon the subject, and when Hall delivered the models he was armed with authority from the plaintiff to take back the defendant's instructions. It thus conclusively appeared that Hall was the agent of the plaintiff for the limited purpose of delivering the models to the defendant and taking back his message. (*Jacobs v. Marshall*, 6 Duer, 689.) If that message, which related to the subject of the errand on which the messenger was sent, had been delivered to the plaintiff, it would have saved the large and needless expense for which compensation from the defendant is now sought. All of the work described in the complaint was done after the delivery of the models to the defendant and before the delivery of the proofs to him. Under these circumstances, the plaintiff, who employed Hall,

must stand the consequences of his carelessness or perfidy. In view of the positive and uncontradicted testimony of Mr. Cary as to the authority of Hall, who was called by neither party, we think there was no question of fact to go to the jury as to his agency.

The plaintiff, however, contends that both Mackey and Barnes were interested witnesses, and that their credibility presented a question of fact for the jury. There is no doubt that the defendant was interested, but Mr. Barnes does not appear to have been interested in any way. He was connected with the projected railroad enterprise and expected to be its chief engineer, but he had no pecuniary interest in the contract in question, and there was nothing in his testimony or the circumstances to throw any doubt upon his candor as a witness. The mere fact that he expected to become an officer of the railroad does not make him an interested witness.

Moreover, the plaintiff did not ask to go to the jury upon this question. At the close of the evidence the trial judge remarked : " I do not see that there is any question of fact to be submitted to the jury. * * * If Mr. Hall was the agent of the Bank Note Company, there is no issue of fact as to what the statements of the defendant were to him in regard to going on with the work. There is no dispute about that. It is testified both by Mr. Mackey and Mr. Barnes, and no testimony the other way. If that proof were conclusive and binding upon the Bank Note Company, why, of course, the plaintiff could not recover. If it were not, then the plaintiff might be entitled to a verdict upon the evidence as it stands." The plaintiff's counsel then said : " It is a question of fact of which party he was the agent. We ask to go to the jury on the question of fact involved in the case." After a colloquy between court and counsel upon the question of agency the trial judge said : " I think there is a question of law whether, under the evidence in the case, upon which there is no conflict, Mr. Hall can be said to have been, in regard to this transaction, the agent of the Bank Note Company. The undisputed testimony of two witnesses is that, as an independ-

ent direction was given Hall, entirely outside of the contract relating to the time of performance of the work, in regard to which there is no provision whatever in the contract, he was told this work must not be proceeded with until after the receipt by the plaintiff of further orders. If that is binding upon the plaintiff, why it closes, in my judgment, this case. If it is not, then it does not." The defendant's counsel thereupon moved for the direction of a verdict for the defendant, and the plaintiff asked to go to the jury upon the questions of fact involved in the case, specifying the question of agency and the question as to the custom and usage of the bank note company, but not asking that any other question should be submitted except in the general way already mentioned. In view of the remarks of the court, and the specific requests of counsel, it was incumbent upon the plaintiff, if it desired to have any question as to the credibility of the two witnesses named submitted to the jury, to present a definite proposition upon the subject. (*Distin* v. *Rose*, 69 N. Y. 122; *Booth* v. *Boston & Albany R. R. Co.*, 73 N. Y. 38; *Schile* v. *Brokhahus*, 80 N. Y. 614.)

The learned General Term sustained the plaintiff's exceptions to the direction of a verdict against it, and held, in a very brief memorandum concurred in by a majority of the justices, that the case turned on the question whether Hall was the agent of the one party or the other. Its only authoritative declaration to justify the reversal was as follows : " On this ·question," referring to the subject of agency, " plaintiff offered material evidence, which it was entitled to have considered with the other facts proved, which was excluded."

This evidence was not pointed out, but the following questions, put by plaintiff's counsel to Mr. Cary on his redirect examination, with the rulings and exceptions thereto, are relied upon to justify the action of the General Term.

" Q. Did you ever give Mr. Hall any authority to represent the company ? [Objected to as calling for a conclusion. Objection sustained. Exception.] Q. Did Mr. Hall ever bring any other matter to your company ? [Objected to as

immaterial — nothing to do with the case. Objection sustained. Exception.] Q. Has he ever brought any other work or job since this work? [Objected to as incompetent. Objection sustained. Exception.]" Just before these questions were asked, the witness had testified: "I don't know who Mr. Hall was. He came to our office to inquire; never saw him, except in relation to this matter."

We find no error in these rulings. The first question clearly involved a conclusion and was excluded on that ground. If the plaintiff wished to establish any fact by Mr. Cary, its counsel should have asked a question that called for a fact and not for a conclusion as an answer. Later on in the trial the proper question was asked of the same witness and very fully answered.

The other two questions were clearly immaterial in view of the positive testimony of Mr. Cary to the effect that Hall had authority to show the models to the defendant and take back his instructions. Moreover, the witness had already sworn, in substance, to the facts sought to be proved by these questions. But, assuming that the witness had answered the questions in the negative, which would have been the most favorable answer that he could give in aid of the plaintiff, it could not have changed the result. The verdict was not directed on the theory that Hall was the general agent of the plaintiff, or that he had been the agent of the plaintiff on any other occasion or for any other purpose than the occasion and purpose referred to by Mr. Cary in his testimony. As long as that testimony was neither modified nor contradicted, it was quite unimportant whether Hall had received express authority to represent the plaintiff on any other occasion or not. The case turns upon what was done on the occasion when the models were delivered, and no competent question relating to that subject was excluded. The facts sought to be proved by these questions, although immaterial, were in fact proved before the close of the evidence. Admitting all that is claimed to be established by them to be true, and the result is not affected.

While the plaintiff may have a cause of action, none was

·established on the trial, and no exception was taken that warranted the action of the court below. We, therefore, correct its error, as well as our own, by reversing the order of the General Term and directing judgment for the defendant on the verdict, with costs in all courts.

GRAY and HAIGHT, JJ., concur upon the ground that the plaintiff failed to meet the burden upon it of proving the fact of Hall's agency for the defendant Mackey, by a preponderance of evidence, and MARTIN, J., concurs absolutely ; O'BRIEN and BARTLETT, JJ., dissent ; PARKER, Ch. J., not sitting.

Order reversed, etc.