Charles P. McConnell, Appellant, v. Theodore A. Hellwig and Charles E. Reutter, as Copartners Doing Business under the Firm Name and Style of Hellwig & Reutter, Respondents.

Second Department, January 9, 1920.

Trial — what defendants must show to maintain verdict for defendants rendered by direction of court — action against stockbrokers on regular account — counterclaim on special account — witnesses — credibility of plaintiff as a witness for jury — principal and agent — acts of agent chargeable to principal — acts of defendants' employee in speculating on special account as chargeable to defendants — estoppel.

Where at the close of the testimony the court, under plaintiff's exception, takes the case from the jury and directs a verdict for the defendant, the defendant must show on appeal that there could be no question of fact determined in favor of the plaintiff that would entitle him to a judgment, in order to sustain the action of the trial court.

In an action against stockbrokers to recover, upon an account stated, the balance due on a regular account, wherein the defendants counterclaimed upon a balance due on a special account, the trial court took the case from the jury at the close of the testimony and gave judgment for the defendants. Held, that the evidence justified a finding that the said special account had been closed by the plaintiff at a time when there was no deficit and that an issue of fact was raised by the evidence as to whether the account had

been so closed, and that, therefore, the action of the trial court in taking the case from the jury was erroneous.

Where the testimony of the plaintiff in an action is uncontradicted, his credibility is for the jury to determine.

The evidence tended to establish that the plaintiff opened a special account with the defendants for speculative transactions at the request of one M. who was in charge of the defendants' office throughout the time of the transactions involved in the action; that the plaintiff permitted said M. to speculate on said account, subject to daily report and statement followed by monthly statement; that in these transactions M. received a commission from the plaintiff without knowledge of his employers; that later the plaintiff withdrew his authority to M. and the account was closed with profits but was reopened, and later at a time when the account showed a profit the plaintiff directed M. to close it as to all future transactions. However, M. thereafter and without knowledge of the plaintiff continued his dealings with said special account which finally resulted in a deficit thereon, and on that deficit the counterclaim is based.

*Held,* that said M. was the agent of the defendants during all the transactions, and if plaintiff gave notice to M. to close the account and yet M. continued his dealing with the special account, then M. imposed on the defendants while acting in the scope of his authority and his duties as their agent and the resulting losses are those of the defendants. This is true although M. did not communicate the notice to the defendants.

The plaintiff did not forfeit the benefit of the rule stated by the agreement with M. to divide the profits on the special account.

The plaintiff was not estopped or bound by a ratification by failing to make inquiry beyond M. when he did not receive notices from the defendants of the state of the special account after he had ordered it closed, though he knew that monthly notices of the interest charges on inactive accounts were usual and he had theretofore received them.

The failure of the plaintiff to actually sell securities remaining in the special account cannot be regarded as a ratification of the acts of said M. in speculating on said account after notice had been given to close it.

APPEAL by the plaintiff, Charles P. McConnell, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Nassau on the 18th day of November, 1918, upon the verdict of a jury rendered by direction of the court granting defendants a recovery on their counterclaim.

*Russell H. Robbins* [*Roderic Wellman* with him on the brief], for the appellant.

*Charles W. Stapleton,* for the respondents.

Jenks, P. J.:

The plaintiff, a customer of the defendants' firm, had two accounts, " regular " and " special." He sues upon an account stated in the regular account. The special account was " margined " solely by the regular account. The defendants counterclaim upon a balance in the special account struck by deduction of the amount due plaintiff in the regular account. At the close of the testimony at Trial Term, the court, under plaintiff's exception, took the case from the jury and gave judgment for the defendants. This was a decision that the plaintiff was not, and the defendants were, entitled to this judgment despite any findings by the jury that could be justified by the evidence. (*Stone* v. *Flower*, 47 N. Y. 566.) The defendants must maintain that there could be no question of fact determined in favor of the plaintiff that entitled him to a judgment. (*Middleton* v. *Whitridge*, 213 N. Y. 499; *Carlisle* v. *Norris*, 215 id. 403.)

I think that the learned court erred. The evidence justified a finding that at a period in the special account there was no deficit. The plaintiff testifies that at that period he gave notice that there must be no more transactions in the special account. I think that an issue was thus raised for the jury. In 1914 the plaintiff was introduced to the defendants as a · customer by Mayhew. Thereupon the regular account was opened, and thereafter maintained comparatively inactive. Mayhew was an employe of the defendants. At his instance, early in 1916, the special account was opened for speculative transactions. The plaintiff testifies that at first the dealings therein were suggested by Mayhew for plaintiff's preliminary authority, later that Mayhew had free hand subject to daily report and statement followed by monthly statement, still later this discretion was withdrawn, and finally, in October, 1916, the special account was closed with profits. The plaintiff testifies that in December, 1916, he authorized Mayhew to reopen the special account, and that dealings were had therein until about June 1, 1917, when he directed Mayhew to have the special account closed as to all future transactions, and to have it kept open only for the retention of two stocks therein which then showed a profit and were to be sold if ordered by the plaintiff or whenever the margin, in the judgment of the defend-

ants, was insufficient. Throughout these times Mayhew was in the service of the defendants, who describe him as their " chief clerk," and who testify that his duties were to see that everything in their office " went along smoothly," to oversee the keeping of the firm books, to draw up the margin cards, to receive customers at the office, to answer them over the telephone, to receive orders thus given, to report the orders to the firm and to transmit them for execution to the member of the firm on Exchange. The plaintiff testifies that the confirmatory notices of transactions received showed but those which he had authorized.

The jury could have found that all of the orders of the plaintiff for the special account were given to Mayhew, were executed by the defendants under Mayhew's communications to them, and were recorded in the firm books. I think that the court should have determined that in these doings Mayhew was the agent of the defendants. (*Franklin Bank Note Co.* v. *Mackey,* 158 N. Y. 140, 147; Mechem Agency, § 105; *Gulick & Holmes* v. *Grover,* 33 N. J. Law, 463, 473.)

The plaintiff testifies that he gave this notice to stop all transactions in the special account to Mayhew. If so, the notice was given and received by Mayhew within the scope of the authority and of the duties cast upon him by the defendants, and, therefore, notice to the agent Mayhew was notice to his principals, the defendants. (*Henry* v. *Allen,* 151 N. Y. 9; *Ingalls* v. *Morgan,* 10 id. 178, 184. See, too, *Boyd* v. *Yerkes,* 25 Ill. App. 527.) The doctrine that notice to the agent is notice to his principal, rests upon the duty of disclosure by the agent and the presumption of the discharge of that duty; but the presumption ceases if in the matter affected by such notice the interest of the agent is adverse to that of his principal. (*Benedict* v. *Arnoux,* 154 N. Y. 728; *Brooklyn Distilling Co.* v. *Standard D. & D. Co.,* 193 id. 551, 555.) It has not been, but it may be argued that the interest of Mayhew was adverse because the cessation of transactions in the special account ended the possibility of future profits. But the defendants knew nothing of this agreement until informed by the plaintiff at the time of the discovery of the deficiency. If at the time of the notice to cease all transactions in the special account there was a profit, Mayhew's interest was not adverse and for the reason

also that he was entitled to a bonus from the defendants on the net business of the firm. If at the time of such notice there was no deficit, the same answer applies. And it seems to me that the plaintiff was not required to yield the presumption on which the doctrine rests, on the surmise that Mayhew might continue transactions in the special account despite the notice, thereby committing a crime. (See *Birkett* v. *Postal Telegraph-Cable Co.*, 107 App. Div. 117; affd., 186 N. Y. 591.)

There is no evidence that the defendants actually received this notice, but if it was given to Mayhew and he did not convey it to the defendants, his failure was a breach of his duty to them, but that failure could not affect the plaintiff. (*Cox* v. *Pearce*, 112 N. Y. 637, 641.) Whether the plaintiff gave the notice to Mayhew depends upon the plaintiff's testimony alone. None but Mayhew could contradict him, and Mayhew was discharged by the defendants after their discovery of wrongdoings, and this record knows him no more. But the credibility of the plaintiff was not for the court, but for the jury, under the rule of *Hull* v. *Littauer* (162 N. Y. 569).

If the jury find that the plaintiff did not give the notice to Mayhew, the situation is quite different. The plaintiff had left the special account open. Admittedly the plaintiff for a long period had authorized the dealings of Mayhew with the account, and during that period in effect had ratified them. Mayhew but continued his transactions in that special account for the plaintiff and in the same fashion.

If the plaintiff gave the notice to Mayhew and yet Mayhew continued his dealings with the special account, then he imposed upon the defendants while acting in the scope of his authority and his duties as their agent (*Birkett* v. *Postal Telegraph-Cable Co.*, *supra*), and the consequent losses are those of the defendants under the rule declared in *Caswell* v. *Putnam* (120 N. Y. 153, 158; and see *Lee* v. *Village of Sandy Hill*, 40 N. Y. 448), unless the plaintiff forfeited the benefit of the rule.

The defendants contend that plaintiff did forfeit such benefit, in that he had made this agreement with Mayhew to divide the profits on the special account. The motive for this agreement is not indicated by the evidence. It may have been friendship — for plaintiff and Mayhew were old acquaintances. It may

have been for further assurance that one who was in touch with Wall street would be more cautious in advice. There is no indication that the agreement contemplated any breach of confidence or betrayal of Mayhew's principals. Even if it be contended that this arrangement made Mayhew an agent for the plaintiff, it cannot be gainsaid that throughout the transaction he was also the agent of the defendants and that the notice to him to cease the transactions was notice as to a matter in the very scope of the authority and duties conferred upon him by the defendants. (See *Boyd* v. *Yerkes, supra.*) Stress is laid on the omission of the plaintiff to push inquiry beyond Mayhew when plaintiff did not receive notices from the defendants of the state of the special account, in that he knew that monthly notices of the interest charges, even though an account was wholly inactive, were usual and he had theretofore received them. Criticism is made that the plaintiff stood silent and at gaze with the special account left open after his notification to Mayhew to cease transactions in the special account. But mere negligence is not ratification. (*Combs* v. *Scott*, 12 Allen, 493.) And I cannot think that there was any estoppel or quasi estoppel upon the part of the plaintiff if the deficit was due to the dishonest dealings of Mayhew with the special account, because no negligent act of plaintiff could be the proximate cause. To quote the language of Bowen, L. J., in *Mayor, etc., of Merchants of the Staple of England* v. *Governor and Company of Bank of England* (L. R. 21 Q. B. Div. 160), " the proximate cause was the felony and crime of Drew, and that it cannot be said that the felony was itself either the natural or likely or necessary or direct consequence of the carelessness of the plaintiffs," cited in Bigelow on Estoppel (6th ed., p. 712).

The evidence upon the new trial as in the trial under review may well justify the conclusion that the loss was due to the fault of Mayhew alone, and the case may come to application of the doctrine that is a rule of last resort (*Rapps* v. *Gottlieb*, 142 N. Y. 168), of the liability of one of two innocent parties.

The evidence could have justified the finding that the plaintiff and the defendant were the two innocent parties; that Mayhew, despite the directions of the plaintiff, continued these transactions in the special account left open, and imposed upon

the defendants by false orders. A question of fact might arise which of the parties by omission or by commission made the doings of Mayhew possible — a question that upon this record is not merely determined by the circumstance that Mayhew was in the employ of the defendants. The doctrine of equitable estoppel rests upon this doctrine of two innocent parties. (Pom. Eq. Juris. [3d ed.] 1421.) It may be that if this doctrine become germane to the new trial, there will arise a question for the jury. (*Brown* v. *Bowen,* 30 N. Y. 519; *Page* v. *Methfessel,* 71 Hun, 442; *Blakeslee* v. *Sincepaugh,* Id. 416; *Moore* v. *Bowman,* 47 N. H. 494.) I add that the rule seems to be that it is not necessary to find that the party estopped intended to mislead, or it is not material whether the conduct relied upon be " affirmative or negative, active or quiescent." (*Continental Nat. Bank* v. *Nat. Bank of the Commonwealth,* 50 N. Y. 575, 586; *Leather Manufacturers' Bank* v. *Morgan,* 117 U. S. 96, 108; *Blair* v. *Wait,* 69 N. Y. 116.)

I advise a reversal of the judgment and the grant of a new trial, with costs to abide the event.

MILLS, RICH, PUTNAM and BLACKMAR, JJ., concur.

Judgment reversed and new trial granted, costs to abide the event.