CHARLES S. HIRSCH and Others, Copartners Doing Business as HIRSCH, LILIENTHAL & Co., Appellants, v. GEORGE L. DESCHLER, Respondent.

First Department, January 9, 1931.

*Herbert R. Limburg* of counsel [*Lionel S. Popkin* with him on the brief; *Limburg, Riegelman, Hirsch & Hess*, attorneys], for the appellants.

*Reuben Tally* of counsel [*Gordon, Tally & Gordon*, attorneys], for the respondent.

McAvoy, J.   The appeal is from a judgment which was founded upon a verdict of a jury in an action brought by a firm of stock-brokers against their customer for an amount advanced for him in the purchase of securities, less what was recovered upon the sale of such securities, which had been held by the brokers as collateral for advances.   The sale of the stock was made in November, 1929, upon the failure of the customer to send in more margin which had then been demanded.

The defendant's defense was that he had an agreement with a branch manager or customers' man to the effect, as his testimony shows, and as the court construed the agreement upon the trial, that the plaintiffs would sell out his stocks when the equity was wiped out in such a manner that there would be no loss.   This agreement was not set up as a counterclaim, as it should have been, if it were intended to constitute a setoff or a reduction of plaintiffs' claim, but even though it had been so pleaded, it would not have availed the defendant, for his evidence shows that he was not damaged by the breach of the agreement.

He testified that he demanded on the morning of the 6th of November, 1929, that his whole account be sold out and at that time there was an equity in excess of $4,000 in the account.   He said he wanted his account entirely sold out that day because it was just about even at that time.   He testified that the branch manager, Leary, said he would sell nothing; that he had nothing to do with selling and that if the defendant wanted to sell he should give his own orders to the selling clerk.

If there were an agreement to sell just as the stock reached the

bottom of the equity, so that there would be no loss in the account, except the loss of the collateral, which had been put up for the loans, it was then the duty of the defendant to reduce any possible damage by proceeding to sell on his own account. His testimony shows that any damages then accruing could have been prevented from occurring, if he placed an order to sell as Leary told him to do with the selling clerk of the house. Thus the damage resulted not from the breach of the contract by Leary in failing to sell, but from defendant's placing his order to sell only 1,700 shares instead of his entire ownership of 2,700 shares, because his account then at prevailing prices was approximately even, and there would have been no damage if he himself had placed the order to sell at the time that it is alleged Leary broke the agreement.

We think, therefore, as a matter of law, the alleged agreement, if made — and there is considerable doubt that it is not such an extraordinary and unusual agreement, as could not have been made properly by the sort of employee who is alleged to have made it — does not constitute any defense to the plaintiffs' claim to the amount of their advances, and the defense should have been dismissed and judgment directed for the plaintiffs for the sum of $31,748.29, with interest from November 14, 1929, as there is no dispute about the amount due.

The judgment and order appealed from should, therefore, be reversed, with costs, and judgment directed in accordance herewith in favor of the plaintiffs, with costs.

DOWLING, P. J., and MERRELL, J., concur; FINCH, J., dissents.

FINCH, J. (dissenting). In the ordinary case, whether or not an oral agreement was made presents a question of fact to be determined by the jury. In the case at bar it is a question of the word of one against that of the other, with attendant circumstances and inferences tending to show that the agreement alleged by the defendant was made as found by the jury. It is urged that this agreement is so unusual as to counterbalance the otherwise weight of evidence. But such improbability exists only if the agreement is given the strained construction put upon it by the plaintiffs, namely, that defendant should not be liable for his purchases theretofore or thereafter made (thereby releasing the defendant from repaying some $164,000), and that the plaintiffs guaranteed him against loss and would require no further margin on past purchases or future purchases. This, however, is not the agreement testified to by the defendant. Neither is the agreement susceptible of such a construction. Upon the contrary, it is not an extraordinary agreement, and, under all the circumstances of the case,

does not impose an undue tax upon credibility. It is simply an agreement that if the defendant would make additional purchases of securities for his account, the manager of the plaintiffs' office at which the defendant traded, would watch the account, and if and when the equity of the defendant was about exhausted, would close out the account without loss to the defendant of more than the equity which he then had in the account. At the time this agreement was made, it was the opinion of the plaintiffs' manager that the market had turned and was about to go up. At this time the defendant had an equity of about $18,000 in the account, having already put up $95,000 in cash. This amount he was willing to risk upon the forecast of the plaintiffs' manager. He was not willing, however, to assume risk of loss of more money than he had in the account, since he had no further means. Hence the agreement. The plaintiffs' manager proved a false prophet. The decline accelerated into the proportions of a panic. The plaintiffs' manager then repudiated the agreement. He said: " Agreements mean nothing in a market like this. I have to look out for myself and my job. You look out for yourself." Not at all an incredible situation.

It is further urged that the manager in charge of this branch office of the plaintiffs did not have authority to make such an agreement with the defendant. It is admitted, however, that this same manager made the original agreement calling for the maintenance of a fifteen-point margin, and it further appears that the plaintiffs authorized this manager to permit the defendant to trade on less than a fifteen-point margin. Having once modified the marginal agreement pursuant to express authority from the plaintiffs obtained without the knowledge of defendant, and occupying the position of a general manager, there was apparent authority in the manager to bind the plaintiffs and they are responsible for his acts. (*McConnell* v. *Hellwig*, 190 App. Div. 244; *Bosak* v. *Parrish*, 252 N. Y. 212; *Globe & Rutgers Fire Ins. Co.* v. *Warner Sugar Ref. Co.*, 187 App. Div. 492, 494.)

The judgment and order appealed from should be affirmed.

Judgment and order reversed, with costs, and judgment directed in accordance with opinion in favor of plaintiffs, with costs. Settle order on notice.