JAMES EDWARDS et al., Respondents, *v.* JOHN E. DOOLEY et al., Appellants.

Where an agent, employed to purchase goods for his principal, does so with moneys furnished by the latter for that purpose, the title passes direct from the vendor to the principal; this is so, also, although the agent, instead of using the funds furnished by his principal, uses these for his own purposes and substitutes other funds therefor.

Mere possession of the property by the agent, after such purchase, does not confer a power of sale, and, *it seems,* an unauthorized sale by him, although for a valuable consideration, and to one having no notice that another is the true owner, vests no title in the vendee.

While a principal is bound, so far as he has given to the agent either authority or appearance of authority, for the acts of the latter, in dealing with another, who acts in reliance upon the apparent authority, he is not bound by the acts of the agent not within the actual or apparent scope of the agency, simply because the agent falsely asserts that they are within it.

Plaintiffs employed one F. to purchase hides for them at O., and ship them to plaintiffs at B.; F. was authorized to rent a storehouse and plaintiffs agreed to pay all expenses and to furnish the money for the purchases. F. agreed to enter into no other business, either for himself or any other house, and to buy no hides except for the plaintiffs. F. entered upon the performance of his agency, the money necessary to pay for his purchases and expenses being advanced by plaintiffs upon drafts drawn upon them by F. In violation of his agreement, F., without the knowledge of plaintiffs, connected himself with the firm of P. C. & Co., who were engaged in slaughtering cattle. From the proceeds of drafts

drawn upon plaintiffs F. advanced money to P. C. & Co., which that firm used in purchasing cattle; their hides, when slaughtered, were delivered to F., in accordance with the understanding between him and said firm. An account, as purchases, of all the hides so received was rendered by F. to plaintiffs. Defendants were bankers at O. and creditors of P. C. & Co. To secure this indebtedness and to obtain an additional sum for the benefit of that firm, F. transferred to defendants by bill of sale, given as collateral, the entire stock of hides at O.; they took possession and sold them. In an action to recover the value, *held*, that upon the delivery of the hides to F. the title and possession were in the plaintiffs; and, as F. had no authority, real or apparent, to sell, that defendants were liable.

Before taking the bill of sale defendants, who had discounted some of the drafts drawn by F. upon plaintiffs, wrote to the latter, asking as to the financial ability of F. & Co., which firm, they stated, was doing business at O. as hide merchants and drawing on plaintiffs. To this plaintiffs replied, in substance, that they knew of no such firm; that F. had no capital and was employed to buy hides for them and to draw on them for the cost. At the time of the transfer by F. he informed the defendants that the hides were all paid for, but were, as yet, unfit to be shipped east, and that another firm in which F. was also interested would furnish the funds to repay the loan. *Held*, that these facts were sufficient to charge the defendants with notice that F.'s possession of the hides was simply as agent for plaintiffs, or, at least, to put them on inquiry as to the existence of a right in conflict with that they sought to acquire.

(Argued April 29, 1890; decided June 3, 1890 )

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made February 28, 1888, which modified and affirmed as modified a judgment in favor of plaintiff entered upon a verdict.

This action was to recover the value of a quantity of hides.

Plaintiffs claimed title on the ground that the hides were bought by their agent, and with their money.

Defendants claimed under a bill of sale given by said agent as security for a present loan of money.

At the close of the testimony the defendants moved to dismiss the complaint " upon the ground that no title in plaintiffs had been shown to the property," and the contention upon the argument of this appeal was that the respondents' title was not

legal, but equitable solely, and insufficient to maintain an action for conversion.

The uncontradicted evidence was that, in August, 1877, the plaintiffs employed one George Ford to go to Cheyenne and purchase hides at that place and in that vicinity, and ship them to the plaintiffs at Boston. The contract was in writing, and provided that Ford should hire a place to store the hides until they could be shipped. Plaintiffs were to pay all expenses at Cheyenne, such as rent, cartage, etc., and to furnish all the money necessary to purchase the hides, and Ford was to render a full account of his transactions every week, or oftener. He was to engage in no business, either for himself or any other house, and to buy no hides or skins excepting for the plaintiffs, his entire services being employed in their behalf.

Under this agreement Ford went to Cheyenne and entered upon the performance of his contract; but subsequently, with the plaintiffs' consent, removed the business to Ogden. He hired a storehouse, where the hides were stored and baled, and from which they were shipped to the plaintiffs. The money necessary to pay for the hides and the expenses of the business was advanced by plaintiffs upon drafts drawn upon them by Ford and collected through bankers at Ogden. Ford rendered to the plaintiffs from time to time statements of the business and memorandum of purchases. In the statements he charged himself with the cash received and credited himself with the merchandise purchased, and the expenses. In the memorandum of purchase he gave particulars of each purchase. In violation of his agreement Ford connected himself with the firm of Parsons, Chase & Co., who were engaged in slaughtering cattle at Corinne, a few miles from Ogden, and also became a member of the firm of Ford & Russel, dealers in dressed beef, at San Francisco. From the proceeds of drafts drawn upon the plaintiffs Ford advanced money to Parsons, Chase & Co., which the latter used in purchasing cattle, and having slaughtered them, the hides were delivered to Ford, and the dressed beef was shipped to Ford & Russel, to be sold at

San Francisco.   Plaintiffs had no knowledge of these transac-
tions.  On February 17, 1879, the defendants, who were bankers
at Ogden, were creditors of Parsons, Chase & Co. to the amount
of $4,000.   To secure this indebtedness and also to obtain a
loan of an additional sum of $5,500, for the benefit of Parsons,
Chase & Co., Ford transferred by bill of sale to the defend-
ants the entire stock of hides in the storehouse at Ogden.
Subsequent to the date named other hides of the value of
$2,394 were put into the warehouse by Ford, and $2,500
having been paid in on the $5,500 note, a car load of hides
was released to Ford and shipped to the plaintiffs.   Plaintiffs
were notified of the transaction, and Mr. Brackett, on March
eighteenth, demanded possession of the hides from the defend-
ants.   This was refused, and the balance of the $5,500 note
being unpaid, defendants on that day sold the entire stock for
$6,308.67.   On December twenty-eighth, preceding the above
mentioned events, the defendants wrote to the plaintiffs the
following letter :

" Ogden, Utah, <i>Dec.</i> 28, 1878.

" Messrs. Edwards & Brackett, Boston, Mass. :

" Gentlemen — Will you please inform us in confidence
what you know of the financial ability of Geo. Ford & Co.,
hide merchants, who are doing business here, and drawing on
you ?   They desire to avail themselves of our facilities, and
we can materially aid them in their business provided they
have a sufficient amount of capital to make us safe in doing so.

"Any information will be kept strictly confidential, and we
shall be happy to reciprocate at any time.

" Respectfully yours,<br>"J. E. DOOLY & CO."

To which plaintiffs replied as follows :

" Boston, <i>January</i> 7, 1879.

" Messrs. J. E. Dooly & Co., Ogden, Utah :

" Gentlemen — Your favor of 28th December is received,
contents noted.   We do not suppose that Mr. Ford has much
if any means of his own, nor is there any Co. to George Ford

& Co. that we know of. *Our arrangement with Mr. Ford is that he is to buy hides to send to us, and he is to draw on us for the cost of them. He has been doing this business for a year or more. As he has no capital of his own he advises us of purchases which he makes and draws on us for the money to pay for them.*

> ."Yours very truly,
>
> "EDWARDS & BRACKETT."

Plaintiffs had a verdict for the amount realized on the sale of the hides by defendants and interest.

The General Term reduced the judgment entered on such verdict by deducting therefrom $508.50, and from the judgment so reduced the defendants appealed to this court.

Further facts appear in the opinion.

*Roger A. Pryor* for appellants. In trover, where plaintiff is not in possession, he can recover only on proof of the legal title. (*Clemens* v. *Yturria*, 81 N. Y. 285 ; *Goulet* v. *Assler*, 22 N. Y 225, 228 ; 2 Greenl. on Ev. § 636 ; Abb. Tr. Ev. 625, 628 ; *Lasperye* v. *McFarland*, 7 Am. Dec. 705 ; *Fulton* v. *Fulton*, 48 Barb. 581 ; *Abercrombie* v. *Bradford*, 16 Ala. 560 ; *Ames* v. *Palmer*, 42 Me. 197 ; *Killian* v. *Carroll*, 13 Ired. 431 ; *Burke* v. *Savage*, 13 Allen, 408 ; *Landon* v. *Emons*, 97 Mass. 37 ; *Winship* v. *Neale*, 10 Gray, 382 ; *Lamb* v. *Clark*, 30 Vt. 347 ; *Clark* v. *Rideout*, 39 N. H. 238 ; *Herring* v. *Tilghman*, 13 Ired. 392 ; *Middlesworth* v. *Sedgwick*, 10 Cal. 392 ; *Gould* v. *Bank*, 86 N. Y. 83 ; *Baldwin* v. *Burrows*, 47 id. 199.) The legal title, even to the money furnished by respondents and in Ford's hands was, as to third persons dealing with him in good faith, vested in Ford — insomuch that a transfer of it by him in payment of his precedent debt, placed it beyond reclamation by the rightful owner. (*Stephens* v. *Board*, 79 N. Y. 183, 187 ; 1 Smith's L. C. 814 ; *Justh* v. *Bank*, 56 N. Y. 478 ; *Southwick* v. *Bank*, 84 id. 434.) As Ford not only had possession of the money with which the hides were bought, but purchased them in his own

name as buyer, *a fortiori* the legal title to the hides was in him. (2 Pom. Eq. Juris. § 1049; Perry on Trusts, §§ 127, 135; 1 Story's Eq. Juris. § 316; *Day* v. *Roth*, 18 N. Y. 448; *Bridenbecker* v. *Lowell*, 32 Barb. 9.)   But, while the beneficial owner may follow and fasten a trust upon the proceeds of his misappropriated money, so long as it may be traced and identified, yet, this right of pursuit and reclamation is arrested and precluded, the moment those proceeds get into the hands of a *bona fide* purchaser.   (*Van Allen* v. *Bank*, 52 N. Y. 4, 5, 10; *Dows* v. *Kidder*, 84 id. 121; *Baker* v. *Bank*, 100 id. 33; *Day* v. *Roth*, 18 id. 452; *Newton* v. *Porter*, 69 id. 133, 139; *Rahel* v. *Griffin*, 12 Daly, 244; *Hooley* v. *Gieve*, 9 id. 112; *Crocker* v. *Crocker*, 31 N. Y. 509; *Schlaeffer* v. *Carson*, 52 Barb. 533; 2 Pom. Eq. Juris. §§ 417, 470, 1048, 1051, 1058, 1080; Story's Eq. Juris. §§ 1255–1258; Snell on Eq. 27; *Rexford* v. *Rexford*, 7 Lans. 6; *Paddon* v. *Taylor*, 44 N. Y. 371; *Poorman* v. *Moore*, 22 Wkly. Dig. 561.)   The burden of proof of notice to appellants was upon respondents, and a finding of the issue in favor of respondents was wholly without evidence.   (*Calais S. B. C.* v. *Scudder*, 2 Black, 214; *Williamson* v. *Brown*, 15 N. Y. 354; 2 Pom. Eq. Juris. 45; *Mason* v. *Lord*, 40 N. Y. 477.)   The right to the goods is in appellants, by virtue and operation of another familiar rule of law, namely, that "whenever one of two innocent persons must suffer by the act of a third, he who has enabled that third person to occasion the loss, must sustain it." (*Rawls* v. *Deshler*, 4 Abb. Ct. App. Dec. 12; *N. Y., etc., R. R. Co.* v. *Schuler*, 34 N. Y. 69; *Preston* v. *Wetherspoon*, 35 Alb. L. J. 156; *Lickbarraw* v. *Mason*, 1 T. R. 70; *Hern* v. *Nichols*, 1 Salk. 289; *McNiel* v. *Bank*, 46 N. Y. 329.)   As the appellants bought on the faith of Ford's ownership, they are protected not only by the policy, but by the letter of the Factors Act.   (*Howland* v. *Woodruff*, 60 N. Y. 73; *Cartwright* v. *Wilmerding*, 24 id. 521; *Donovan* v. *Dean*, 116 id. 203.)   "Where trust money has been mingled with other moneys of the trustee so as to be undistinguishable, and the trustee has made investments generally with the moneys in

his possession, the *cestui que trust* cannot claim a specific lien upon the property ·or funds constituting the investments." (*Ferris* v. *Van Vechten*, 73 N. Y. 113.) · As to third persons, Ford was a partner with Edmunds & Brackett, in the business of buying and selling hides. If by the terms of the agreement between Ford and respondents the relation of partnership was created, they were· partners despite any express provision to the contrary. (*M. B. Co.* v. *Sears*, 45 N. Y. 801; *Smith* v. *Bodine*, 74 id. 33; *Williams* v. *Gillies*, 53 How. Pr. 429; *Richardson* v. *Hughitt*, 76 N. Y. 55, 58; *Curry* v. *Fowler*, 87 id. 38; *Leggett* v. *Hide*, 58 id. 272; *Mason* v. *Partridge*, 66 id. 633; *Magovern* v. *Robertson*, 116 id. 65; *M'Clellend* v. *Remsen*, 3 Abb. Ct. App. Dec. 74; *Willett* v. *Stringer*, 17 Abb. Pr. 152; *Mabbett* v. *White*, 12 N. Y. 443; *Van Brunt* v. *Applegate*, 44 id. 544.) It is, error in the court to assume a controverted fact. (*Wilcox* v. *Green*, 72 N.Y. 17, 22; *New Jersey* v. *Baker*, 94 U. S. 610.) " It is at the peril of the plaintiff to ask instructions disposing of the whole case, which excluded from the jury the consideration of the evidence of the defendant tending to show that he had a right to recover." (*Clark* v. *Hammerle*, 27 Mo. 55, 70; Thompson on Charging the Jury, § 71; *White* v. *Thomas*, 80 Am. Dec. 348; *Stocking* v. *Fry*, Id. 138; *Ryan* v. *Miller*, 12 Daly, 77.) A misleading charge is error. (*White* v. *Thomas*, 80 Am. Dec. 348; *Ward* v. *Henry*, 88 id. 672; *Smith* v. *Overby*, 30 Ga. 241.)

*William A. Jenner* for respondents. The legal title to the hides was in the plaintiffs, and Ford's possession thereof was the plaintiffs' possession. (*Jackson* v. *Anderson*, 4 Taunt. 24; *Laing* v. *Butler*, 37 Hun, 144; *Kimberly* v. *Patchin*, 19 N. Y. 330; *Crocker* v. *Crocker*, 31 id. 507; *Hoy* v. *Reade*, 1 Sweeny, 626, 634; *Horton* v. *Morgan*, 19 N. Y. 170; *Moore* v. *Hillabrand*, 37 Hun, 491, 493; *Van Alen* v. *A. N. Bk.*, 52 N. Y. 1; *Justh* v. *N. Bk.*, 56 id. 483; *Sanger* v. *Waterbury*, 116 id. 371; 100 id. 51; 101 id. 568; *Baker* v. *N. Y. N. Bk.*, 100 id. 34; *F. S. M. Co.* v. *Warford*, 1 Sween. 433;

*Dob* v. *Halsey*, 16 Johns. 34; *U. N. Bk.* v. *Underhill*, 102 N. Y. 336.) A bailee cannot pledge. (2 Kent's Comm. 621–625; *Saltus* v. *Everett*, 20 Wend. 267; *Brown* v. *Peabody*, 3 Kern. 121; *Wooster* v. *Sherwood*, 25 N. Y. 278; *McCombie* v. *Davies*, 6 East. 538; 1 Smith's L. C. 896; *Howland* v. *Woodruff*, 60 N. Y. 79; *Walther* v. *Wetmore*, 1 E. D. Smith, 7.) The defendants had full and explicit notice that Ford's possession of the hides was, as agent, merely for the plaintiffs, and that the hides in his possession were the property of the plaintiffs. (*Wright* v. *Cabot*, 89 N. Y. 570; *Penfield* v. *Dunbar*, 64 Barb. 239; *Barnard* v. *Campbell*, 55 N. Y. 463; *Van Arminge* v. *Peabody*, 1 Mason, 440; *Kelly* v. *Smith*, 1 Blatch. 290; *Rodriguez* v. *Hefferman*, 5 Johns. Ch. 429; *Stevens* v. *Wilson*, 6 Hill, 512; *Linnen* v. *Cruger*, 40 Barb. 633; *Ballard* v. *Burgett*, 40 N. Y. 314; *Austin* v. *Dye*, 46 id. 500; *Fowler* v. *H. M. Co.*, 20 Wkly. Dig. 321; *Cook* v. *Adams.* 1 Bosw. 497.) It was proper to show the state of the accounts between Ford and plaintiffs, and to show that, as between themselves, plaintiffs had paid Ford for all the hides which he reported as bought. (*Milliner* v. *Lucas*, 3 Hun, 496.) But it was proper to show upon whom the drafts were drawn without producing the drafts, as proofs of a "voluminous fact." (1 Greenl. on Ev. § 93; Starkie on Ev. 645, 646; *Lewis* v. *Palmer*, 28 N. Y. 271–278; *Spencer* v. *Billing*, 3 Camp. 310.)

BROWN, J. The principal contention of the appellant on this appeal is that the legal title to the hides in question was not in the respondents.

The court denied a motion to dismiss the complaint made on that ground, and it instructed the jury "that if the hides * * * were bought by Ford or his agents with money furnished to him for that purpose by the plaintiffs, they were plaintiffs' property at the time Ford pledged them.

"That the plaintiffs became the owners of the hides as soon as they were paid for, whether or not Ford used for that purpose the specific proceeds of the drafts drawn upon the plain-

tiffs, or used such proceeds for his own purposes and made up the amount by substituting other funds for such proceeds."

These propositions stated correctly the law applicable to the case.

To recover in trover there must have been possession of the property by the plaintiffs, or there must be an existing right to take immediate actual possession of it.

Ford's business at Ogden was to purchase hides for the plaintiffs. He had agreed to give them his entire services and engage in no other business or employment. Funds were placed in his possession to enable him to execute and perform that agreement, and if the hides in question were purchased by him in the performance of his contract, and paid for out of moneys furnished to him by the plaintiffs for that purpose, his acts were the plaintiffs' acts, and the delivery to him of the hides was a delivery to the plaintiffs and vested the title and possession in them.

It is a well-settled principle of the law of agency that the agent is but the instrument of the principal, who acts by and through him. An individual assumes the relations, acquires the rights, and incurs the obligations which are the proper results of his acts, equally, whether he does those acts himself or through the medium of another. In either case the thing done is the act of the principal. The hides transferred to the defendants were all procured either from Parsons, Chase & Co. or from sources other than that firm. Ford, in violation of his agreement with plaintiffs, became a partner with Parsons, Chase & Co., and, to enable them to carry on their business, paid to them the proceeds of drafts he drew upon the plaintiffs. The money thus obtained was paid by plaintiffs to enable Ford to perform his contract with them. The consideration for the advance to Parsons, Chase & Co. was the future delivery of hides that would be taken from cattle slaughtered by that firm. The fact that the money thus supplied to Parsons, Chase & Co. was first used to purchase cattle which they slaughtered and that the dressed meat was sold by Ford at San Francisco, and the money resulting from such sales again

used to enable Parsons, Chase & Co. to carry on their business, does not necessarily alter the nature of the transaction between Ford, as plaintiffs' agent, and Parsons, Chase & Co. with reference to the hides.

It may be that plaintiffs, if they had been cognizant of these dealings, might have repudiated them and recovered their money from Parsons, Chase & Co., but it is equally true that third parties could not do that for them, and if plaintiffs do not complain of that manner of purchasing hides by their agent no one else can. In substance and effect, therefore, there was a sale of the hides by Parsons, Chase & Co. to Ford in consideration of advances of money, and upon delivery of the hides, the contract was executed and the title and possession were in the plaintiffs.

The witness Johnston, who was a clerk for Ford after January 1, 1879, and during the whole period in which the hides in question were delivered to Ford, testified as follows: "All the money that was advanced to Parsons, Chase & Co. by Ford was advanced to secure the hides that came off the cattle, and the cattle were generally bought by money obtained from Ford & Russel."

"During the time I was with Ford he never bought any hides and paid for any hides except with the direct proceeds of drafts drawn upon Edwards & Brackett."

As to the hides procured elsewhere than from Parsons, Chase & Co., the evidence is of a similar character. Johnston testified as to them as follows: "Ford had two travelers out buying hides and shipping them in. He bought any hides that were offered at Ogden if they were cheap enough. Hides purchased by Ford were very seldom purchased on credit. As a rule, unless they had been previously paid for by advances to the sellers, they were paid for in cash. Ford obtained the money which he paid for hides purchased by drawing drafts on Edwards & Brackett, and got the cash at the bank."

It thus appears, without contradiction, that all the money paid for the hides purchased by Ford was furnished by the

plaintiffs, and as there was no claim that Ford was purchasing hides for any persons except the plaintiffs, the conclusion was permissible that they were purchased in the performance of his agreement with the plaintiffs. This conclusion is strengthened by the fact that the purchase of all the hides transferred to the defendants was reported by Ford to the plaintiffs in a detailed statement showing the number. of each kind, their weight, cost and where purchased, and there appears to be no contradiction of the testimony of Mr. Brackett that the plaintiffs paid for all the hides which Ford reported he had purchased.

After the transfer to the defendants a large quantity of hides were placed in the warehouse by Ford, all of which were paid for by the plaintiffs' money. This evidence, if not absolutely conclusive, certainly permitted the jury, under the instructions of the court, to determine that the title to the hides was in the plaintiffs, and as the court refused to hold as a question of law that the hides were the property of plaintiffs, but allowed the jury to pass upon that question, the defendants had as favorable a ruling on the case as they could possibly have been entitled to.

It would be impossible, upon the evidence, to sustain the claim of the appellants that the title to any of the hides after their delivery to Ford at the warehouse at Ogden was in Parsons, Chase & Co., and the contention that the title was in Ford is opposed to well settled principles of the law of agency.

The learned counsel for the appellant has referred us to many cases holding that an agent purchasing property in his own name with trust funds is but a trustee for the principal, whose only remedy is to follow the property in a court of equity and fasten a trust upon it for his own benefit. But those authorities have no application to cases like the one under consideration, where the agent has purchased the very property which his principal authorized him to purchase. Here the act of purchasing is the act of the principal, and the title passes by the contract of sale from the seller to the principal.

None of the other exceptions in the case can be sustained. The title being in the plaintiffs, it was not possible for Ford to convey the same to the defendants unless authorized thereto by the plaintiffs, or unless the plaintiffs had, by words or acts, done that from which third parties would have been justified in believing that Ford had authority to sell the property.

The fundamental principle of the law of personal property is that no person can be divested of his property without his own consent.

Mere possession does not confer a power to sell, and an unauthorized sale, although for a valuable consideration, and to one having no notice that another is the true owner, vests no higher title in the vendee than was possessed by the vendor. (*Covill* v. *Hill*, 4 Den. 323; 2 Kent's Comm. 324.)

While a principal is bound by his agent's acts when he justifies a party dealing with his agent in believing that he has given to the agent authority to do those acts, he is responsible only for that appearance of authority which is caused by himself, and not for that appearance of conformity to the authority which is caused only by the agent.

That is, he is bound equally by the authority he actually gives, and by that which, by his acts, he appears to give.

For the appearance of authority he is reponsible only so far as he has caused that appearance. For the appearance of the act the agent alone is responsible. The fundamental proposition is that one man can be bound only by the authorized acts of another. He cannot be charged because another holds a commission from him and falsely asserts that his acts are within it. (*Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.*, 13 N. Y. 599–634; *Bickford* v. *Menier*, 107 id. 490.) Ford had no authority to sell or pledge the hides purchased. The sole purpose of their purchase was to ship them to Boston and sell them in that market. The few instances of sales of small quantities that were unfit to be shipped to the plaintiffs (if known to the defendants) would not have warranted the belief on their part that he had authority generally to dispose of the hides.

His acts in entering into extensive business arrangements at Ogden and elsewhere, and giving himself the appearance of a man engaged in large business enterprises, although doubtless calculated to mislead parties dealing with him, cannot be attributed or charged to the plaintiffs.

They had no knowledge of his violation of the agreement with them in that respect, and these acts of Ford cannot be resorted to to establish a power not included within the line of his commission.

The rule is, that whoever deals with an agent, constituted for a special purpose, deals at his peril when the agent passes the precise limits of his power. (*McCombie* v. *Davies*, 6 East. 538; *Saltus* v. *Everett*, 20 Wend. 267; *Wooster* v. *Sherwood*, 25 N. Y. 279–287.)

And we find no evidence in the case that would sustain a claim that the plaintiffs had held Ford out to the world as possessing any general authority to dispose of their property.

But the plaintiffs' case does not rest upon this rule of law alone.

We are of the opinion that the defendants had notice that Ford's possession of the hides was as agent for the plaintiffs, and that the hides were the property of the plaintiffs, and if this notice was not explicit, it was at least sufficient to put them upon inquiry as to the existence of a right in conflict with that they sought to acquire.

On the 7th of January, 1879, in response to an inquiry from defendants as to the financial ability of George Ford & Co., hide merchants, plaintiffs wrote the defendants as follows:

" Our arrangement with Mr. Ford is, that he is to buy hides to send to us and he is to draw on us for the cost of them. He has been doing this business for a year or more. As he has no capital of his own, he advises us of purchases he makes and draws on us for the money to pay for them."

The court instructed the jury that " If the defendants had knowledge of the fact that Ford was engaged in the business of buying hides for the plaintiffs with money furnished by them and shipping them on their account, the defendants

acquired no title to the hides by virtue of Ford's pledge thereof to them."

The defendants had knowledge outside of this letter of the drafts drawn upon plaintiffs by Ford. Some of these drafts had been discounted by them at dates as early as October, 1877, and as late as January 30, 1879. At the time of the transfer, Orth was told by Ford that the hides were all paid for, but were as yet, unfit to be shipped East. That they could not be shipped for four or five weeks, and that in ten days Ford & Russell of San Francisco would furnish the funds to repay the loan.

These facts in connection with the plaintiffs' letter were sufficient to put the defendants on inquiry as to the plaintiffs' rights.

They had reason to believe that Ford was not the sole owner of the goods, and that plaintiffs were interested in them. They knew Ford's business was not to sell to plaintiffs, but to buy for them; that the cost of the hides was reported to plaintiffs, who thereupon furnished the money to pay for them; that Ford had no capital, and that the particular hides in question were to be shipped East.

They made no inquiry whatever but relied upon Ford's assertion that he was the owner, and their neglect in that respect is fatal to their claim to be considered *bona fide* purchasers. (*Williamson* v. *Brown*, 15 N. Y. 354; *Wright* v. *Cabot*, 89 id. 570.)

There was no error in the charge of the court upon the subject of notice which I have quoted.

The other exceptions present no vital error and the judgment must be affirmed, with costs.

All concur.

Judgment affirmed.