SAMUEL K. NESTER, Appellant, v. THOMAS G. CRAIG, Respondent, Impleaded, etc.

*Contract made by a special agent in excess of his authority — risk assumed in dealing with a special agent.*

Authority conferred by a principal upon a special agent, to sell barley for cash, on immediate delivery, at Detroit, Michigan, at one dollar and fifty cents per hundred pounds, *held*, not to authorize the agent to contract for the sale of barley for delivery at Phelps, New York, at intervals of a week during a period of more than two months, at eighty cents a bushel, payable in installments after each delivery.

One who deals with a special agent, specially authorized for that transaction, is put upon inquiry as to the extent of the agent's authority and deals with him at the risk of his authority being exceeded.

APPEAL by the plaintiff, Samuel K. Nester, from a judgment of the Supreme Court dismissing his complaint, entered in the office of the clerk of Ontario county on the 26th day of September, 1892, on the direction of a nonsuit at the end of the plaintiff's case, at the Ontario Circuit, and from an order denying the plaintiff's motion for a new trial made upon the minutes.

*D. B. Backenstose*, for the appellant.

*W. S. Hubbell*, for the respondent.

DWIGHT, P. J.:

The action was for damages by the failure of the defendants to perform an executory contract for the sale to the plaintiff of a large quantity of barley. The plaintiff was a maltster at Geneva, New York, and the defendants composed the firm of Gillett & Hall, grain dealers, at Detroit, Michigan. The contract of sale was made by one J. Blumenthal, a barley broker, assuming to act as agent for the defendants. His authority was derived solely from the following letter and telegram:

" GILLETT & HALL, GRAIN COMMISSION MERCHANTS.
"DETROIT, *Sept. 27th*, 1890.
" MR. J. BLUMENTHAL, *Rochester, N. Y.*:
" DEAR SIR:    *    *    *

We express to you two samples and you can sell on sample, A 6,000 bus. at $1.55 net here.   B. 10,000 bus. at $1.56 net here.

The weight of the barley is 46 & ½ lbs., but as we let them go through the cleaner in Elevator before loading, the weight will come to 47 and over. * * * Yours, &c.,

"GILLETT & HALL. D."

"The Western Union Tel. Company.

"DETROIT, MICH., *Oct.* 4, 1890.

"To J. BLUMENTHAL,

"*Care Agt. Geneva, N. Y.:*

"Will allow you to sell the two lot one fifty net, if not better, although the State is well cleaned out of barley and prices will shortly go much higher. * * *

"GILLETT & HALL."

The contract entered into by Blumenthal with the defendant was as follows:

"10, 6, 1890.

"Sold to S. K. Nester, Geneva, N. Y., 6,000 bushels sample A and 10,000 bushels of sample B Michigan State barley as per samples furnished me by Gillett & Hall, of Detroit, at the price of 80 a bushel delivered track, Phelps, N. Y., at the rate of 2,000 bushels a week, commencing October 20th (or faster if so ordered) till sale is filled, as stated in Mr. Dieterlie's letter of September 27th. Barley to come recleaned and uniform. Payments to be made by N. Y. exchange as soon as each shipment arrives.

"J. BLUMENTHAL."

"I accept above sale to me.

"S. K. NESTER."

It was conceded that the prices named in the letter and telegram were for 100 pounds of barley, while that named in the contract was for a bushel of forty-eight pounds. "Mr. Dieterlie's letter of September 27th," mentioned in the contract, was the letter of the defendants by "D.," which is quoted above as defining the authority of the agent Blumenthal.

It seems very clear that the contract upon which the action is brought, was not within the authority conferred upon the agent who assumed to make it. The authority was to sell for cash, on immediate delivery, at Detroit, at $1.50 per 100 pounds. The contract was for delivery at Phelps, N. Y., at intervals of a week during a period of more than two months, at eighty cents a bushel, payable

in installments after each delivery. These terms differ widely. Possibly the eighty cents per bushel might cover freight, insurance, storage, elevator charges, etc., in addition to the $1.50 per 100 pounds net, which the defendants were to receive, though even that is not demonstrated by the evidence; but there are other substantial respects in which the terms of the authority and of the contract differ. By the contract the defendants were charged with the responsibility of carrying this large amount of grain for an average period of five weeks, while they waited for their money, and bore the risk of loss and damage by fire, or other causes, except so far as they might provide for their own indemnity by insurance. They must provide nearly $1,000 for freight charges and bear whatever risks of transportation are not covered by the liability of the common carrier.

Altogether, it is difficult to see how the agent, who held only the authority conferred by the communications of the defendants of September twenty-seventh and October fourth, could have assumed to make the contract with the plaintiff of October sixth.

The plaintiff must be presumed to have known the extent and limitations of the agent's authority, because the letter of September twenty-seventh, which controlled that authority, is specifically referred to in the contract itself; but even if such were not the case, he is chargeable with such knowledge and limited by the terms of the authority actually possessed by the agent. He was a special agent, specially authorized for this transaction, and the plaintiff was put upon inquiry as to the extent of his authority, and dealt with the agent at his risk of that authority being exceeded. (*Walsh* v. *Hartford Ins. Co.*, 73 N. Y. 10; *Edwards* v. *Dooley*, 120 id. 540, 541; *Michael* v. *Eley*, 61 Hun, 180.)

There was no essential fact in dispute in this case. The question whether the contract was within the authority to make it, was a question of law. We think it was correctly disposed of by the direction of a nonsuit, and the judgment entered thereon must be affirmed.

LEWIS, MACOMBER and HAIGHT, JJ., concurred.

Judgment and order appealed from affirmed.