(116 App. Div. 839)

### MOLLOY v. WHITEHALL PORTLAND CEMENT CO.

(Supreme Court, Appellate Division, Second Department. January 25, 1907.)

1. EVIDENCE—CREDIBILITY OF WITNESSES—CONCLUSIVENESS.

Where testimony is not contradicted by direct evidence, nor by any legitimate inference deducible therefrom, and is not opposed to the probabilities, it is conclusive.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2431.]

2. PRINCIPAL AND AGENT—AUTHORITY—RIGHTS OF THIRD PERSONS—CONSTRUCTIVE NOTICE.

Where plaintiff dealt with a broker who was not generally the agent of defendant, a cement manufacturer, and there was no reason why plaintiff should think he was, plaintiff, in contracting with him for a quantity of cement, was chargeable with notice of his limited authority to agree upon the time of delivery.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Agent, § 529.]

3. JUDGMENT—TRIAL OF ISSUES—NONSUIT—FAILURE OF PROOF.

The granting of a motion to dismiss a complaint being in effect a nonsuit, a judgment on the merits was improper.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 359.]

Appeal from Trial Term, Westchester County.

Action by Frank W. Molloy against Whitehall Portland Cement Company. From a judgment for defendant, plaintiff appeals. Modified and affirmed.

Argued before HIRSCHBERG, P. J., and JENKS, HOOKER, MILLER, and GAYNOR, JJ.

Abram J. Rose (Alfred C. Pette, on the brief), for appellant.

George M. Mackellar, for respondent.

JENKS, J. This is an action for damages for breach of contract of sale. The plaintiff complains that on September 18, 1901, the defendant agreed to sell and to deliver to him a quantity of cement at the price of $1.20 per barrel; that up to December 26, 1901, the parties proceeded in performance, but that on September 4, 1902, the defendant refused further performance. The defendant admits that it sold and delivered to the plaintiff a certain quantity of cement prior to December 21, 1901, that it has refused to furnish cement upon a demand, and otherwise denies the allegation of the complaint. At the close of the plaintiff's testimony the defendant moved to dismiss the complaint on the ground of no cause of action proven. This motion was denied then, to be considered later. Thereupon the defendant offered no evidence and renewed its motion, which was granted. The plaintiff made requests for submission of certain questions, and finally

of the whole case, which were denied under exceptions. Judgment was therefore entered dismissing the complaint upon the merits, and the plaintiff appeals.

In September, 1901, the plaintiff was a contractor at work upon a sewer at New Rochelle. The defendant was a maker of cement, and Sears, Humbert & Co. were its agents. In that month Mr. Vernon, a broker in selling cement, negotiated with Sears, Humbert & Co. as the agents of the defendant for the sale to plaintiff of about 15,000 barrels of cement at $1.20 a barrel. Subsequently the defendant, at plaintiff's request, delivered to him 680 barrels of cement, of which the last shipment was in December, 1901. On August 23, 1902, the plaintiff, in his letter to the defendant inclosing a payment for the cement received, wrote demanding a further consignment of 1,000 barrels. The defendant answered that it had no contract and would not comply. Mr. Sears, called by the plaintiff, testified on cross-examination that Mr. Vernon, the broker, told him that the plaintiff wished the price for the cement to be fixed at the low figure of $1.20 a barrel, because it was "a winter contract"; that the cement was required for fall, winter, and spring deliveries. His testimony is that the demand for cement is not so great during those seasons, that the mill men wish to work through the winter, that they do not wish to store the product, and therefore they are willing to sell it at lower prices. It appeared that there is a marked difference between such prices and the prices in the other months, unless there is an over-production. Mr. Sears also testifies the price was fixed with Mr. Vernon at $1.20 a barrel for the reason that the cement would be taken during the fall, winter, and spring, during the dull season, that he then said this to Mr. Vernon, and that there was never any variation or change in the terms thereof. It appeared that this business throughout was done by Mr. Vernon, and that the plaintiff never had any personal relation with the defendant or its agents, Sears, Humbert & Co.

The learned counsel for the appellant contends that the court erred in its disposition of the case because the testimony that the authority of Mr. Vernon was confined to a winter contract was elicited on cross-examination, and given by a conceded agent of the defendant, and therefore his credibility was for the jury. In Hull v. Littauer, 162 N. Y. 569–572, 57 N. E. 102, the court, per Gray, J., say:

"Generally, the credibility of a witness, who is a party to the action and, therefore, interested in its result, is for the jury; but this rule, being founded in reason, is not an absolute and inflexible one. * * * Where, however, the evidence of a party to the action is not contradicted by direct evidence, nor by any legitimate inferences from the evidence, and it is not opposed to the probabilities, nor, in its nature, surprising, or suspicious, there is no reason for denying to it conclusiveness."

See, too, Second Nat. Bank v. Weston, 172 N. Y. 250, 64 N. E. 949.

First, there was no direct evidence to contradict the testimony of Mr. Sears; second, he is not contradicted by any legitimate inferences from the evidence, and it is not opposed to the probabilities. The testimony of Mr. Sears that the demand for cement was not as great in the period of the year covered by a "winter contract" seems reasonable, in view of the purposes of the use of such material. It seems entirely

natural, as he testifies, that the mill men should wish to work in the winter, rather than to shut down their mills, and that they should prefer to sell their product rather than to store it, and that rather than to store it they should prefer to sell it at a lower price than that obtained when the demand for the product is greater. Assume that Mr. Sears' version is correct, and there is no bit of the evidence that contradicts it. The cement was to be furnished under a winter contract made in September. It was furnished from time to time until December. No further demand was made until August of the next year, and up to that time no intimation was given by the plaintiff to the defendant or its agents, Sears, Humbert & Co., that the plaintiff stood upon any contract whatever. If it be asked why the defendant did not during the "winter season," if that season under that term extended into the spring, attempt on its part to insist that the plaintiff take more of its cement, an explanation may be found in fact that, although Mr. Vernon said that the plaintiff would pay for the cement delivered within 30 days, there was "trouble," as Mr. Sears testifies, in collecting the payment and the check therefor was not sent until August. At the time the demand was made, the plaintiff testifies that the price per bag was $2.50.

It is also contended that it was error to dismiss the complaint, because the evidence would have warranted a finding by the jury that Vernon was given the power to make the contract for the cement required for the completion of the plaintiff's contract with the city of New Rochelle, and as an incident thereto to fix the date of delivery, and that, in the absence of knowledge by the plaintiff as to the instructions for winter deliveries, the contract made by Vernon was binding on the defendant. In the first place, Vernon was a broker on his own account, and was not generally the agent of the defendant. Not only does Sears testify to this fact, but the plaintiff testifies:

"I was to send to the Whitehall Portland Cement Company, or Sears, Humbert & Co., either one. He [Vernon] told me that Sears, Humbert & Co. were the selling agents."

The letterhead of Mr. Vernon read: "Walter E. Vernon, Portland and Rosendale Cements." It does not appear, as the learned counsel for the appellant contends, that Mr. Sears was thoroughly familiar with the contract of the plaintiff, and therefore of his natural requirements for cement under it. All that appears is that Mr. Vernon told Mr. Sears that there was a contract, and that the plaintiff would require about 15,000 barrels of cement. There is nothing in this information to negative a supposition by Mr. Sears that all the cement could be furnished under a "winter contract," made in September.

It is also insisted that, as an incident to his power to contract, Mr. Vernon was necessarily invested with power to agree upon the time of delivery, and, in the absence of notice of limitation, the plaintiff was entitled to assume that any contract made by Mr. Vernon would be binding, even though his power to contract was limited to the contract in suit. But, as I have said, Mr. Vernon was not, generally speaking, the agent of the defendant, and there was no reason why the plaintiff should suppose that he was such. He was a general broker on his own account, who acted as middleman between the plaintiff and the de-

fendant, or its general agents. In the language of Dwight, P. J., in Nestor v. Craig, 69 Hun, 543, 545, 23 N. Y. Supp. 948, 949:

"He was a special agent, specially authorized for this transaction, and the plaintiff was put upon inquiry as to the extent of his authority, and dealt with the agent at his risk of that authority being exceeded. Walsh v. Hartford Ins. Co., 73 N. Y. 10; Edwards v. Dooley, 120 N. Y. 540, 541, 24 N. E. 827; Michael v. Eley, 61 Hun, 180, 15 N. Y. Supp. 890."

See, too, Mechem on Agency, § 276.

I cannot find any evidence as to any fact which indicated to the plaintiff an appearance of authority in Mr. Vernon to make a contract at these prices for a period beyond the term of a winter·contract, caused by the acts or omissions of the defendant or its general agents. See Edwards v. Dooley, 120 N. Y. 540, 551, 24 N. E. 827. Of course, the mere fact that Mr. Vernon told the plaintiff that he had negotiated such a contract, and that thereafter, on demand of the plaintiff, the defendant shipped cement, does not make for the plaintiff, inasmuch as the cement was shipped early in the· season of a winter contract.

The judgment must be modified by striking out the provision that the dismissal was upon the merits. The motion made and granted was for a dismissal of the ·complaint, and hence was a nonsuit. Peggo v. Dinan, 72 App. Div. 434, 76 N. Y. Supp. 565; Weeks v. Van Ness, 104 App. Div. 7, 10, 93 N. Y. Supp. 337. If the defendant's final motion had been for a direction of the verdict, a different question would be presented. See McDonald v. Metropolitan St. Ry. Co., 167 N. Y. 66–70, 60 N. E. 282, 283, where the court, per Martin, J., say:

"If there is no evidence to sustain an opposite verdict, a trial court is justified in directing one, not because it would have authority to set aside an opposite one, but because there was an actual defect of proof, and hence, as a matter of law, the party was not entitled to recover. Colt v. Sixth Ave. R. R. Co., 49 N. Y. 671; Bagley v. Bowe, 105 N. Y. 171, 179, 11 N. E. 386, 59 Am. Rep. 488."

The judgment must be modified accordingly, and, as so modified, is affirmed, without costs. All concur.