chinery of the ordinary kind from a reputable firm who installed it in the usual way, his duty seems to have been performed.

Second, on the question of proper inspection: This is the master's duty, which cannot be delegated, and the fact that the master employs a competent man to inspect does not relieve the master of his liability, if the inspector does not properly inspect. Byrne v. Eastman's Co., 163 N. Y. 461, 57 N. E. 738; McGuire v. Bell Tel. Co., 167 N. Y. 208, 60 N. E. 433, 52 L. R. A. 437. This accident occurred 20 minutes after 8 in the morning; the plaintiff having gone to work at 8 o'clock. The foreman testified that it was his duty to inspect, that he knew that these bolts were liable to loosen, that it was his duty to tighten them, and that he had tightened them on many occasions. He testified, generally, that he had inspected the machinery that morning, but he did not testify that he inspected these particular bolts on this particular wheel. It is conceded that inspection was easy, and the looseness of these bolts and nuts could have been readily discovered by proper inspection. They were in plain sight if the inspector got close enough to the wheel. I think that as the foreman, who said that he properly inspected, was the employé of the defendant, and that, if negligence there was, it was his, it was for the jury to say whether he had performed his duty, and that, as the accident occurred so shortly after the machinery started up, this, coupled with the condition of the wheel when examined after the accident, presented a question of fact which the jury alone could determine as to whether, under all the circumstances, there had been a proper or negligent inspection.

Upon a dismissal at the close of the plaintiff's case, the evidence must be viewed in the light most favorable to the plaintiff, and, as we think a question of fact was presented, the dismissal was error, the order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

---

JOHNSON v. FIRST NAT. BANK OF FRANKLIN, N. Y.

(Supreme Court, Appellate Division, Third Department.   May 5, 1909.)

1. CORPORATIONS (§ 149*)—BONA FIDE PURCHASER OF STOCK.
   Though J. took plaintiff's money, and agreed to buy stock with it for her, yet he having taken the legal title in his name, without fault of the corporation, and having transferred it to the defendant, a bona fide purchaser, the legal title of defendant, having an equal equity with plaintiff, will prevail.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 539–546, Dec. Dig. § 149.*]

2. CORPORATIONS (§ 123*)—BONA FIDE PURCHASER OF STOCK.
   An extension of time for payment of a debt in consideration of a pledge of stock makes the pledgee a holder for value.

   [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 123.*]

   Sewell, J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Appeal from Trial Term, Delaware County.

Action by Emily Johnson against the First National Bank of Franklin, N. Y. From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

L. F. Raymond (Charles L. Andrews, of counsel), for appellant.
W. F. White, for respondent.

SMITH, P. J. This action is brought to recover the value of five shares of stock of the Delaware National Bank of Delhi claimed to have been converted by the defendant. This stock was held by the defendant as collateral to a note signed by Robert T. Johnson, the plaintiff's father, and dated July 30, 1902. In 1891 the said Johnson had borrowed from the defendant bank a sum of $550, and had given as collateral to a note made to secure the loan 10 shares of the stock of the Delaware National Bank. Thereafter the Delaware National Bank failed, and an assessment was made of 50 per cent. on the stockholders, and the stock reduced one-half. Johnson failed to pay his assessment, but upon the sale of the stock, in default of the payment of the assessment, he purchased the same for $500, and took the title in his own name. The 10 shares of stock which was held as collateral to the note in 1891 was originally the property of the wife of Robert T. Johnson and the mother of the plaintiff, who died intestate in 1890. Robert T. Johnson as administrator of her estate had the stock transferred to his own name. At the time of her death, the wife of said Johnson left some real estate in Franklin, the title to which by the laws of intestacy went to his daughter, who was her sole heir, subject to the right of Robert T. Johnson to his tenancy by the curtesy. The $500 which was used by said Johnson to purchase the stock after default in the payment of his assessment was procured by a mortgage upon the said property, signed both by himself and by his daughter. There is evidence to the effect that Johnson agreed to take this money and buy this stock for this plaintiff, and the jury has found that the plaintiff was the rightful owner of the stock. This finding cannot be disturbed because it rests upon sufficient evidence. The defendant's contention upon this appeal is that, notwithstanding the fact of the plaintiff's ownership of the stock, nevertheless, the defendant was entitled to hold the same and to the benefit thereof, because the stock stood in the name of Robert T. Johnson and was transferred to the bank for value and without notice of the equitable rights of the plaintiff. The claim of the plaintiff is, first, that the defendant could not acquire any superior right by reason of a purchase without notice and for value; and, second, that the defendant's purchase was not for value.

Upon the first question, the plaintiff relies upon the authority of Edwards v. Dooley, 120 N. Y. 540, 24 N. E. 827. In that case the plaintiff's agent, having been furnished money with which to buy hides purchased them, and while they were in his possession, sold

them to a party claiming to be an innocent purchaser for value. It was held that upon the purchase the title to the hides vested in the principal, and the sale even to a bona fide purchaser for value did not vest the title in such a purchaser. But it was there held that the pretended purchaser from the agent was not a bona fide purchaser, and the principal was given damages for the conversion of the hides. The opinion in part reads:

"Mere possession of the property by the agent after such purchase does not confer a power of sale, and, it seems, an unauthorized sale by him, although for a valuable consideration, and to one having no notice that another is the true owner, vests no title in the vendee."

In the case at bar, however, the legal title never vested in plaintiff.

In Weaver v. Barden, 49 N. Y. 286, the plaintiff furnished the consideration for the purchase of stock. The stock was transferred by Finch, the original owner, to the name of the son of the plaintiff, who was also son-in-law of the defendant, without the knowledge or consent of the plaintiff, who had no knowledge that the transfer had been made in that form until some time in 1864, long after the transfer by the son to the defendant. The son at the time of the transfer by Finch, the original owner of the stock, was, in the language of the report of the referee, "to some extent the agent of the plaintiff in New York." It was there held that the purchaser from the son to the extent that he was a bona fide purchaser for value was entitled to protection. The two opinions written in the case differ only as to whether the purchaser was a purchaser for value. They both recognize the rule that, if the equities be equal, he who holds the legal title has the superior right. Judge Grover in writing says:

"The counsel for the respondent claims that the equitable title of the plaintiff was available against this title of the defendant, although acquired upon a bona fide purchase, for the reason that L. J. Weaver (the agent) took the title without the knowledge and consent of the plaintiff. But the plaintiff never had the legal title to this stock. That was transferred to L. J. Weaver by the former owner, and his transfer of the same to a bona fide purchaser gave the latter his title and a right in equity equal to that of the plaintiff, and thus the case comes within the familiar principle that, where the equity of the parties is equal the legal title will prevail."

In the case at bar the plaintiff never had title to this stock. The legal title was given without fault by the corporation to Robert T. Johnson. If the defendant be a purchaser for value, it has equal equity with the plaintiff, and with equal equity the legal title of the defendant must prevail.

We reach, then, the question whether the defendant is a holder of this stock for value. There is no question of its bona fides. Upon the question of value we have only the evidence of the president of the bank. From that evidence it appears that on May 6, 1898, Robert T. Johnson had given a note to the bank for $825. This note was for three months, and continued overdue until August 15, 1900, when a renewal note was taken. Meantime, however, and in 1899 some time, this five shares of stock in question was delivered by Robert T. Johnson to the bank as collateral to this overdue note. It was held by the bank as collateral to this note until August 15, 1900, when a new note

was given for three months, to which this stock was attached as col-lateral. This note was afterwards renewed until July 30, 1902, and to each renewal this stock was attached as collateral. Robert T. John-son died 17th of August, 1902, insolvent. This stock was thereafter sold upon due notice against the prohibition of the plaintiff. The evi-dence of the bank president, which is uncontradicted, is to the effect that, while this note remained overdue after 1898, Johnson sought to have it renewed, but that the bank refused to renew it without ad-ditional security, and it was not agreed to be renewed until after this security was furnished. Before the renewal of August 15, 1900, this stock was unquestionably held as security for a precedent debt. Up-on the renewal at that time, the old note was surrendered, the re-newal made, the extension of time given, and the collateral attached to the renewed note. Under such circumstances we think it is pre-sumed that the renewal was made, the extension of time given upon the faith of this collateral. That an extension of time for the pay-ment of a debt is such value as to give one the rights of a holder for value is now settled law in this state. Cary v. White, 52 N. Y. 138; O'Brien v. Fleckenstein, 180 N. Y. 353, 73 N. E. 30, 105 Am. St. Rep. 768; Breed v. National Bank, 57 App. Div. 473, 68 N. Y. Supp. 68. This question was raised by the request of the defendant's counsel to the court to charge that whether this certificate was actually the property of Robert T. Johnson or not, if it was by him trans-ferred to the defendant here in consideration of the renewal and ex-tension of a valid note given by him to the bank and accepted by them in good faith without notice, that the plaintiff cannot recover. This the court declined to charge, and the defendant excepted. We are of opinion, therefore, that the judgment should be reversed and a new trial granted, with costs to appellant to abide event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur, except SEWELL, J., who dis-sents, and KELLOGG, J., who concurs in result only.