GLOBE AND RUTGERS FIRE INSURANCE COMPANY, Appellant, *v.* WARNER SUGAR REFINING COMPANY, Respondent.

First Department, May 2, 1919.

Insurance — action to recover earned premiums on canceled policy — principal and agent — authority of insurance broker or agent to procure insurance — effect of instructions to agent not disclosed to public — question of fact — question whether insurance company was justified in relying upon apparent authority of agent or broker — question whether retention of policy was ratification of agent's act.

In an action by an insurance company to recover earned premiums at the short rate on a canceled policy of explosion insurance it appeared that on or about May first the plaintiff delivered the policy in question to an insurance broker who had acted as agent and broker for the defendant in securing, placing and canceling insurance for a number of years; that said broker returned the policy for cancellation on June twenty-eighth following and asked that the *pro rata* rate be charged. On behalf of the defendant there was testimony, not entirely free from doubt, that it had given the broker instructions (which were not disclosed to plaintiff) to place the risk only with companies which also had issued or would issue fire insurance policies on the property, such fire insurance being under negotiation with the plaintiff at the time such policy was issued but thereafter declined.

*Held,* under the evidence, that a judgment in favor of the defendant entered upon a verdict rendered by direction of the court should be reversed and a new trial ordered;

That if there were any questions as to whether the instructions were given to the agent or whether the plaintiff was justified in relying upon his apparent authority they were questions of fact for the jury;

That if the instructions were given and the authority of the agent was limited thereby it was a question of fact for the jury to determine whether the retention of the policy by the defendant was not a ratification of the agent's act.

The general rule, that a third person dealing with an agent should ascertain the agent's authority or deal with him at his peril and that a special agent cannot bind the principal where he acts outside the scope of his authority, is subject to the qualification that where an agent is intrusted to do a particular kind of business, he becomes between the principal and the parties dealing with him, the general agent for the transaction of that business, and his acts, as between the principal and strangers, in that particular line will bind the principal, although he violates some private instruction given by the principal not known to the public.

SHEARN and SMITH, JJ., dissented, with opinion.

APPEAL by the plaintiff, Globe and Rutgers Fire Insurance Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 25th day of June, 1918, upon the verdict of a jury rendered by direction of the court.

*Edward A. Freshman* of counsel [*McLean & Hayward,* attorneys], for the appellant.

*J. A. Kellogg* of counsel [*Carmody & Kellogg,* attorneys], for the respondent.

PAGE, J.:

The action is to recover earned premiums at the short rate on canceled policy of explosion insurance. The following facts were stipulated: " That during the month of May, 1917, and for sometime prior thereto one Clarence T. Birkett had been and was an insurance broker carrying on a general insurance brokerage business. That during the month of April, 1917, the defendant placed with said Clarence T. Birkett an order for explosion insurance, said insurance to cover its refinery property at Edgewater, New Jersey, in the total amount of $3,500,000. That said Clarence T. Birkett thereafter and prior to the first day of May, 1917, obtained binders for such explosion insurance in amounts sufficient to cover the sum stated, from various insurance companies with

which he dealt, among which the plaintiff was one. That on or about May 1st, 1917, the plaintiff delivered to said Clarence T. Birkett its insurance policy covering the same subject and between the same parties as the binder issued by plaintiff and referred to in the last preceding paragraph, namely, in the amount of $1,000,000 and insuring the defendant upon its property situate at Edgewater, N. J., from direct loss and damage by explosion for a term of one year beginning at noon May 1st, 1917, and ending at noon May 1st, 1918." Upon the trial plaintiff proved that for a number of years Birkett had acted as agent and broker for defendant in securing, placing and canceling insurance; that prior to May 1, 1917, defendant had negotiated and secured other insurance with the plaintiff through Birkett; that Birkett returned the policy for cancellation on June 28, 1917, and asked that the *pro rata* rate be charged; that plaintiff refused to cancel at that rate and demanded the customary short rate, which for this period was thirty per cent of the premium; that Birkett thereupon left the policy for cancellation and that demand for payment was made on the defendant and refused. On behalf of the defendant there was testimony that it had given Birkett instructions (which were not disclosed to plaintiff) to place the risk only with companies which also had issued or would issue fire insurance policies on the property, such fire insurance being under negotiation with the plaintiff at the time the explosion policy was issued, but who thereafter declined it.

There are two legal questions presented by these facts: (a) Was the defendant bound by the acts of Birkett in negotiating the insurance on its behalf with the plaintiff? (b) If the act of Birkett was unauthorized was it ratified by the retention of the policy until June 28, 1917? Birkett was concededly employed by the defendant to procure insurance against loss by explosion. Therefore he had general authority to negotiate for and receive the particular kind of a policy, on the defendant's behalf, he negotiated for and received from the plaintiff; that he had theretofore negotiated for and received policies from the plaintiff on behalf of the defendant covering other and different risks. When he negotiated with the plaintiff, he was acting within the apparent

scope of his authority. It is true, as a general rule, that a third person dealing with an agent should ascertain the agent's authority or deal with him at his peril, and " that a special agent with limited powers cannot bind the principal where he acts outside of the scope of his authority; but that rule is subject to this qualification, that where an agent is intrusted to do a particular kind of business he becomes, as between the principal and parties dealing with him, the general agent for the transaction of that business; and his acts, as between his principal and strangers, in that particular line, will bind the principal, although he violates some private instructions given by his principal not known to the public." (*Cox* v. *Albany Brewing Co.*, 56 Hun, 489; *Stahlberger* v. *New Hartford Leather Co.*, 92 id. 245; *Newman* v. *Lee*, 87 App. Div. 116; *Cohen* v. *Goldstein*, 128 N. Y. Supp. 69, 70.) The reason for this rule is obvious. No man is at liberty to send a man forth to deal for him, with secret instructions as to the manner in which he is to execute his agency, which are not communicated to those with whom he deals, and then when his agent has deviated from those instructions to say that he was a special agent, that the instructions were a limitation upon his authority, and those that dealt with him acted at their peril. If the principal deemed the transaction to his advantage, the instructions would remain a secret, and he would obtain the benefit. If in his opinion it was otherwise, he could escape liability.

The other party would then be subjected to the hazard of the transaction being set aside or affirmed for reasons of which he had no knowledge and of which he could not take a like advantage. In the instant case, if there had been an explosion upon the defendant's property between the dates of the issuance of the policy and of its cancellation, the defendant could have recovered under the policy and the plaintiff could not have escaped liability by showing that it had not also insured against fire, and that the agent had no authority to negotiate for one without the other, for the plaintiff knew of no such limitation of his authority. Whether these instructions were given was not entirely free from doubt. Although Birkett and the vice-president of the defendant testified that such instructions were given, the

president of the defendant who was present at the conversation. did not mention them in his testimony.

If there was any question as to whether the instructions were given to the agent or whether the plaintiff was justified in relying upon his apparent authority, they would be questions of fact for the jury. Even if the instructions were given and the authority of the agent was limited thereby, it was, at least, a question of fact for the jury to determine whether the retention of the policy by the defendant until June 28, 1917, was not a ratification of the agent's act.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., and DOWLING, JJ., concurred; SMITH and SHEARN, JJ., dissented.

SHEARN, J. (dissenting):

Appeal by plaintiff from a judgment dismissing the complaint, entered upon a verdict directed by the court, in an action to recover a premium alleged to be due by the terms of a policy of insurance claimed to have been issued by the plaintiff to the defendant, insuring the latter against loss or damage by explosion to the amount of $1,000,000.

The transaction was conducted entirely by one Birkett, an independent insurance broker. Although Birkett is continually referred to by plaintiff's counsel as a sort of general agent of the defendant, upon which supposition there is brought forth the familiar line of cases with regard to appearance of authority, Birkett had no connection whatsoever with the defendant, except that he had previously placed insurance of various other kinds for the defendant, as had other brokers. Birkett had also acted for the plaintiff in placing insurance in its behalf and deducted his commissions from the premiums paid. This relation had been an extensive one and had aggregated payments of approximately $5,000 during the year preceding the controversy in question. The defendant was the owner of a large sugar refinery at Edgewater, N. J. Shortly after the outbreak of the war with Germany, explosion insurance for the first time began to be written to a considerable extent in this country. Birkett initiated the negotiations

by going to the defendant and proposing that it take out insurance against damage by explosion. What followed is partly shown by stipulation of facts entered into by the attorneys for the respective parties set forth on pages 118 and 119 of the record. But this stipulation does not purport to set forth all of the facts, and, as shown by the uncontradicted testimony in behalf of the defendant, it omits facts of controlling importance. Birkett's conversation was first had with the president of the defendant, Mr. Warner. The conversation was general and Warner said that if Birkett could get a rate of thirty to thirty-three the defendant would take $3,000,000. The matter was turned over to defendant's secretary, Bell, who authorized the broker to procure explosion insurance to the amount of $3,500,000, but with the specific instruction that it should only be placed in such companies as would also assume the risk of loss by fire. This was a matter of practical importance to the defendant, for in case of an explosion followed by fire, it might be difficult for the insured to establish how much of the damage was caused by the explosion and how much by fire. Birkett testified: " I went back to my office and gave the order to our placer to place $3,500,000 explosion insurance on the Warner Sugar Refining Company." It appears that Birkett was then taken ill, had an operation, and was away from his office for two or three weeks. It does not appear that he informed his employees of the restrictive nature of the defendant's order for insurance. One of his employees, named Charles Warner, applied to the plaintiff for $1,000,000 explosion insurance on the defendant's property on April fourteenth (the negotiations were started about April 1, 1917), and the plaintiff issued a binder and delivered it to Birkett's representative, who took it away with him at the time he made the application. No information was conveyed to the defendant concerning the insurance or issuance of the binder. On or about May 1, 1917, the plaintiff delivered to Birkett's office its insurance policy for a term of one year beginning noon, May 1, 1917. Thereafter, and at some date not clearly established, but before Birkett's return from his vacation or illness, the policy was sent to the defendant and was put among its papers by some office employee. It did not come to the

attention of any of defendant's officers until about June 28, 1917, when defendant's secretary, Bell, had his attention called to it and noticed that the policy was furnished by a company which had not written fire insurance upon the property. He immediately called up Birkett and was assured by Birkett that the company would write the fire insurance. He replied that he must have definite advice about the fire insurance, or the explosion policy would have to be returned. The broker interviewed the officers in regard to the issuance of the fire insurance, and the plaintiff refused to issue it. The next day, immediately upon being advised that the plaintiff would not write the fire insurance, the policy in suit was returned by defendant's secretary to the broker, who afterwards delivered it to the plaintiff.

The plaintiff contends that as the broker was authorized to procure explosion insurance, and so far as plaintiff was concerned had apparent authority to make the contract of insurance, plaintiff's rights cannot be affected by any secret instructions given by the defendant to the broker. As pointed out, there was no evidence warranting a finding that Birkett was in any sense a general agent of the defendant. As a general rule, agents can bind a principal only within the limits of the authority conferred. The exception to the rule is where there is an appearance of authority. But for the appearance of authority the principal is responsible only so far as he has caused that appearance. (*Edwards* v. *Dooley*, 120 N. Y. 551.) There is absolutely nothing in this case to show that the defendant caused any appearance of authority in Birkett. He was merely an independent insurance broker who persuaded the defendant that it was desirable to take out explosion insurance. True, he had written other insurance for the defendant, but so had other brokers. It may be that if the defendant had made Birkett its general insurance broker, and that if he had for a considerable period of time handled all of its business in a manner giving the appearance of authority and discretion, the defendant, by thus permitting him to be held out as its general insurance agent, might be held to have caused an appearance of authority on which insurance companies dealing with the broker might have relied. But this is not such a case. On the contrary, we are

dealing with an ordinary independent insurance broker. Such a broker is a special agent for a single object, and he cannot bind the principal beyond the limit of his authority. (9 C. J. 524.) One who deals with such a broker is dealing with a special agent, specially authorized for that transaction, and is put on inquiry as to the extent of the agent's authority and deals with him at the risk of his authority being exceeded. (*Nester* v. *Craig*, 69 Hun, 543; *Molloy* v. *Whitehall Portland Cement Co.*, 116 App. Div. 839, 843.) The rule contended for by the plaintiff would mean that a business man who employs a broker to obtain insurance, say, only in old line companies, and specially excludes Lloyds, could have foisted upon him against his will a Lloyds policy, simply because he had authorized the broker to obtain insurance.

The only possible ground upon which liability could be held to have been imposed upon the defendant in this case is that of ratification, growing out of the fact that it retained the policy for twenty-four hours after it learned that it was issued by a company which did not insure the defendant against fire loss. Of course there could be no ratification without knowledge, and, therefore, the defendant could not be said to have ratified the broker's act by reason of the fact that the binder was held by the broker for three weeks without its knowledge, or by the fact that the policy had been received by a clerk and put in the defendant's papers without the knowledge of any of its officers or managers. But there was no ratification in holding the policy for twenty-four hours, for it was held simply to enable the broker to get the plaintiff to insure against fire, as he stated that he could do, and the policy was promptly returned when the plaintiff refused such insurance.

It is contended by the plaintiff that, as it is stipulated that Birkett had authority to apply for explosion insurance, and as it appears that the defendant would be liable but for the limitations placed upon the broker's authority, and as these limitations are established by the testimony of interested witnesses, their credibility was involved and it should have been submitted to the jury to determine whether in fact such secret instructions were given. This question would not ordinarily arise, because the plaintiff would have to prove

the actual authority conferred, and this was covered *prima facie* by the stipulation. I think that, as no attempt whatever was made to impugn the credibility of these witnesses, and as there is nothing to contradict their testimony, and as their testimony is so entirely reasonable and in accord with the probabilities and the acts of the parties, it should be held conclusive under the rule in *Hull* v. *Littauer* (162 N. Y. 569).

The judgment should be affirmed, with costs.

SMITH, J., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.